UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

September 16, 2025

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:   *Jonathan Weinberg v. Frank Bisignano, Social Security Administration*[1]
      Civil No. 1:24-cv-3517-JMC

Dear Counsel:

Jonathan Weinberg ("Plaintiff") petitioned this Court on December 5, 2024, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 12, 14, 15). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

I.   **Procedural Background**

Plaintiff filed his Title II application for DIB and Title XVI application for SSI on August 1, 2019, alleging disability as of December 30, 2014. (Tr. 27, 243-245, 266).[2] Plaintiff's claim was denied initially on November 2, 2021, and again upon reconsideration on September 2, 2022. *Id.* at 27. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on October 31, 2023. *Id.* ALJ William R. Stanley conducted a telephone hearing on August 8, 2023. *Id.* ALJ Stanley subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. *Id.* at 24-46. The Appeals Council affirmed

---

[1] Plaintiff filed this case against Martin O'Malley, the Acting Commissioner of Social Security, on December 5, 2024. (ECF No. 1). As Frank Bisignano became the Commissioner of Social Security on May 6, 2025, he has been substituted as this case's Defendant. *See* Fed. R. Civ. P. 25(d).

[2] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

ALJ Stanley's decision on October 30, 2024. *Id.* at 1-7.

## II. The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability December 30, 2014. (Tr. 1, 29). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "fibromyalgia, chronic fatigue syndrome, depressive disorder, anxiety disorder, degenerative disc disease of the cervical and lumbar spine, impingement of the left ankle, migraine, mitral valve prolapse, fibromuscular disease, hypertension, neuropathy, tremor, and psychogenic non-epileptic seizures." *Id.* at 1, 30.

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's obesity, the ALJ opined:

> The undersigned has considered listings 1.14 and 1.18. The claimant reports using a wheelchair and a cane (Exhibit 3E/12). However, he admits that the wheelchair was not prescribed (Exhibit 3E/12). Furthermore, while he reports that the cane was prescribed, his medical records do not contain such a prescription. The claimant also often demonstrates a normal gait (Exhibit 6F/6, 9F/16, 19F/10, 44F/232). Accordingly, these devices are not found to be medically necessary. The claimant can also drive a car, use a computer, and shop in stores, indicating that he can perform fine and gross motor movements with the upper extremities (Exhibit 3E/5). Therefore, the claimant does not meet these listings.
>
> The undersigned has also considered listing 11.14 with respect to the claimant's neuropathy. However, the record does not indicate that the claimant experiences

> disorganization of motor function (Exhibit 19F/10). Also, as discussed above, the claimant does not have a marked limitation in any of the four areas of mental functioning. Accordingly, the claimant does not meet listing 11.14.

(Tr. 30). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant may occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds. The claimant may occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to vibration and hazards, such as dangerous machinery or unprotected heights. The claimant is limited to simple, routine, and repetitive tasks; requiring only simple decisions; with no work requiring a specific production rate, such as assembly line work or work that requires hourly quotas. The claimant is capable of adapting to changes in the work environment, meaning changes in work responsibilities or workplace, which are explained in advance of implementation and implemented gradually over time. The claimant may have occasional contact with coworkers, supervisors, and the general public.

*Id.* at 32. Given this RFC determination, the ALJ concluded at step four that Plaintiff is unable to perform any past relevant work. *Id.* at 35. Plaintiff's past relevant work included work as stage technician and a solar energy system installer, both of which are considered "very heavy, skilled work" with a specific vocational preparation of 7. *Id.* In making this finding, the ALJ reasoned in part:

> The claimant also has fibromyalgia and chronic fatigue syndrome, which could result in limitations greater than the objective physical findings might otherwise suggest (Exhibit 54F/1). He does see a rheumatologist (Exhibit 8F/1). He has had positive tender point testing, but only 8 out of 18 points were positive (Exhibit 22F/4). However, despite these conditions, the claimant can still perform a number of significant activities of daily living. He can cook simple meals for himself. He can still drive a car. He can also shop in stores (Exhibit 3E/3-5). Furthermore, he has been able to travel despite his impairments, including trips to Bangkok, Bali, Malaysia, Japan, Vietnam, Singapore, North Carolina, and New York (Exhibit 7F/50, 32F/1, 44F/277, 54F/24).
> …
> The undersigned finds the opinion of Dr. McMahon somewhat persuasive. She opines that the claimant has moderate mental limitations (Exhibit 45F). This opinion is supported with discussion of the claimant's treatment, although she noted that the claimant's relocation to Thailand limited the frequency of that treatment (Exhibit 45F). This opinion is also reasonably consistent with his lack of psychiatric hospitalizations (Exhibit 40F/2). Therefore, this opinion is persuasive.

> The undersigned finds the opinion of Dr. Knotts somewhat persuasive. This doctor notes that the claimant can complete simple tasks, but may have difficulty sustaining tasks over time and may be physically limited from completing tasks (Exhibit 40F). This opinion is supported with attached examination findings, such as his FSIQ of 77 (Exhibit 40F/3). However, the portion addressing physical limitation is outside her area of practice as a psychologist. Furthermore, the lack of clear social restriction is not consistent with her panic attacks (Exhibit 44F/55). Therefore, this opinion is only somewhat persuasive.
>
> The undersigned acknowledges the statement of Dr. Ghosh. This doctor opines that that the claimant is unable to work (Exhibit 55F). The issue of whether the claimant is an administrative finding reserved to the Commissioner. Accordingly, this is not a medical opinion, and its persuasiveness has not been formally assessed.

(TR. 34-35).

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Router (Dictionary of Occupation Titles (DOT) 222.587-038), with 30,000 jobs nationally; (2) Merchandise marker (DOT 209.587-034), with 129,000 jobs nationally; and (3) Office helper (DOT 239.567-010), with 13,000 jobs nationally. *Id.* at 37. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from December 30, 2014, through the date of the ALJ's decision. *Id.* at 38.

### III.  Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.  Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) that "[th]e ALJ's decision reflects a fundamental misunderstanding of Plaintiff's severe fibromyalgia and its co-occurring conditions, rendering the decision unsupported by substantial evidence" because the ALJ "improperly discount[ed] Plaintiff's statements concerning the intensity, persistence, and limiting effects his severe fibromyalgia and chronic fatigue syndrome…"; and (2) that that [t]he ALJ's residual functional capacity assessment was improperly reached through misapplication of the correct legal standards and is unsupported by

substantial evidence."(ECF No. 12 at 8, 13, 19). For the reasons that follow, the ALJ's and Appeals Council's RFC determination is supported by substantial evidence. As such, I will affirm the case.

    a. <u>The ALJ's and Appeals Council's RFC Determination is Supported by Substantial Evidence</u>

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

    i. *The ALJ and Appeals Council Properly Considered Plaintiff's Fibromyalgia in Determining Plaintiff's RFC*

First, the ALJ's RFC determination, which the Appeals Council adopted, properly considered Plaintiff's fibromyalgia. Plaintiff posits that "as part of the [RFC] assessment, the ALJ was required to evaluate Plaintiff's fibromyalgia symptoms pursuant to SSR 12-2 and a two-step symptom analysis framework set forth in 20 C.F.R. 404.1529 and SSR 16-3p." (ECF No. 12 at 10). As the second step, Plaintiff correctly points out "objective evidence is not required to find the claimant disabled." *Id.* at 11. (emphasis omitted). On this point, Plaintiff posits the ALJ "improperly discount[ed] Plaintiff's statements concerning the intensity, persistence, and limiting

effects of his severe fibromyalgia and chronic fatigue syndrome on the ground that they were 'inconsistent with the evidence as a whole.'" *Id.* at 13. Plaintiff continues,

> [T]he ALJ acknowledged that "the claimant also has fibromyalgia and chronic fatigue syndrome, which could result in limitations greater than the objective physical findings might otherwise suggest," yet nonetheless concluded that objective medical evidence consisting of electromyography and diagnostic imaging of Plaintiff's spine and ankles was inconsistent with Plaintiff's reports of disabling pain and fatigue (Tr. 33, 34). The ALJ also relied on intermittently normal examination findings to support the adverse symptom analysis, e.g., "he does not demonstrate motor deficits"; his "reflexes remain intact"; his "grip strength also is not impaired"; "He has had positive tender point testing, but only 8 out of 18 points were positive" (Tr. 34). The ALJ' reliance on this or any objective medical evidence to discount Plaintiff's symptoms of pain and fatigue belies the fact that she took Plaintiff's severe fibromyalgia seriously and reflects a fundamental misunderstanding of fibromyalgia, particularly as it relates to the symptomology of this disease.

*Id.* at 13-14.

The Court cannot agree. It is true that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arkas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *Shelley C. v. Comm'r of Soc. Sec. Admin*, 61 F.4th 341, 361-62 (4th Cir. 2023). *Arkas* and *Shelley C.* do not, however, "suggest than an ALJ should ignore objective evidence and fully credit subjective statements." *Hardin v. Dudek*, No. 7:24-cv-377-KS, 2025 WL 602951 at *5 (E.D.N.C. Feb. 25, 2025). Instead, ALJs must not "require[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford v. O'Malley*, No. 1:23-cv-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024). Moreover, "a claimant's allegations about [his] pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges [he] suffers." *Craig v. Chater*, 75 F.3d 585, 595 (4th Cir. 1996). Therefore, "while there must be objective medical evidence of some condition that would reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).

This Court is unpersuaded that the ALJ's references to objective evidence amounted to a discreditation of Plaintiff's subjective symptoms. Indeed, the ALJ recognized that Plaintiff's fibromyalgia, "which could result in limitations greater than the objective physical findings might otherwise suggest…He does see a rheumatologist." (Tr. 34). The ALJ reasoned that "despite these conditions, the claimant can still…cook simple meals for himself. He can still drive a car. He can also shop in stores…he has been able to travel…to Bangkok, Bali, Malaysia, Japan, Vietnam, Singapore, North Carolina, and New York." *Id.* In the Court's view, this reasoning does not discredit Plaintiff's allegations of his pain solely based on objective medical evidence or

require Plaintiff to "provide medical evidence that would be impossible to produce," but rather rejects the allegations about his pain "to the extent they are inconsistent with the available evidence.[3]"  *Clifford*, 2024 WL 3105669, at *10; *Craig*, 75 F.3d at 595. Notably, the reasoning directly related to Plaintiff's fibromyalgia does not refer to any medical evidence.[4] *See Theodore F. v. Kijakazi*, Civil Action No. ADC-22-1658, 2023 WL 2837585, at *5 (D. Md. 2023) (finding the ALJ properly disregarded complaints of immobilizing pain when the ALJ considered the plaintiff's symptoms, treatment history, medical records, and observations made by medical providers). And at no point did the ALJ determine Plaintiff should have produced greater objective medical evidence to support his pain intensity. (TR. 33-34).  Instead, the ALJ weighed the possibility that fibromyalgia "could result in limitations greater than the objective physical findings" against the weight of the evidence showing Plaintiff's subjective conduct on the record. *Id.* In other words, the ALJ did not discredit Plaintiff's fibromyalgia complaints based solely on medical evidence, but rather based on evidence of Plaintiff's own conduct. *Id.* Therefore, the Court finds Plaintiff's first argument unpersuasive and concludes that the ALJ's decision, adopted by the Appeals Council, sufficiently considered Plaintiff's fibromyalgia in determining Plaintiff's RFC.

> ii.    *The ALJ's and Appeals Council's RFC Determination is Supported by Substantial Evidence.*

Plaintiff next argues that her RFC determination is inadequate because it fails to "build an accurate and logical bridge from the evidence [to] his conclusion" (ECF No. 12 at 20). Specifically, Plaintiff contends "the ALJ did not explain how he decided that Plaintiff [may perform] 'work requiring a specific production rate, such as assembly line work or work that requires hourly quotas'…would be a sufficient or relevant accommodation for Plaintiff's unique limitations." (ECF No. 12 at 21) (quoting TR. 32).  Plaintiff continues, "there is a logical gap that exists when…an ALJ finds the evidence to support a limitation that Plaintiff did not allege; that appears nowhere in Plaintiff's treatment records; and that no doctor, medical examiner, treating source, non-treating source, or any qualified source believed to be appropriate." *Id.* at 22.  Plaintiff also urges this Court to remand because the ALJ failed to engage in a proper function-by-function analysis. *Id.*

An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Thomas*, 916 F.3d at 311. An ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Id.* (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir.

---

[3] This same reasoning applies to Plaintiff's argument that the ALJ improperly considered Plaintiff's conservative treatments.  (ECF No. 12 at 14). It is true that Plaintiff's symptoms cannot be discredited for "failing to pursue non-conservative treatment options where none exist." *Arkas*, 983, F.3d at 102.  However, the ALJ discussed conservative treatment in the limited analysis regarding degenerative disc disease.  Specifically, the ALJ acknowledged that "imaging f his lumbar spine has shown faced degeneration with moderate to severe stenosis…However, he has not undergone spinal surgery.  Instead, he has undergone conservative treatments such as physical therapy and steroid injections."  (Tr. 33). Here, the recognition that Plaintiff has pursued conservative treatments was not to discredit Plaintiff's fibromyalgia symptoms for "failing to pursue non-conservative treatment options where none exist." *Arkas*, 983, F.3d at 102.

[4] Plaintiff asserts that the "ALJ also relied on intermittently normal examination findings to support the adverse symptom analysis." (ECF No. 12 at 13). However, the objective medical analysis the ALJ considered in those instances related to different impairments and not his fibromyalgia.

2016). Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Thomas*, 916 F.3d at 311. A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636.

Having carefully reviewed the record, the Court is unpersuaded that the ALJ's narrative warrants remand. Plaintiff points to no evidentiary conflict in the record. Rather, Plaintiff insists that the ALJ did not provide a proper narrative because (1) there is no logical bridge between the evidence and the ALJ's conclusion that Plaintiff cannot perform work requiring a production rate, assembly line work, or work requiring hourly quotas and (2) there is no function-by-function analysis. (ECF No. 12 at 22).

Starting with Plaintiff's argument that the ALJ failed to include a proper narrative in support of limitations regarding production rate work and light exertional work, this Court finds that the ALJ included a sufficient discussion to "glean the ALJ's reasoning." *See James T. v. Kijakazi*, No. CV AAQ-22-0574, 2023 WL 1997471, at *4 (D. Md. Feb. 13, 2023). The ALJ's analysis recognized Plaintiff's self-reported limitations including lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, following instructions, using hands, and getting along with others. *Id.* at 33. While the ALJ did not find that the intensity, persistence, and limiting effects of Plaintiff's symptoms were consistent with the evidence as a whole, the ALJ found Dr. Knotts's report "somewhat persuasive," which indicated Plaintiff "can complete simple tasks but may have difficulty sustaining tasks over time and may be physically limited for completing tasks." (Tr. 35). Taken together, the ALJ's RFC determination is supported by "substantial evidence." *Thomas*, 916, F.3d at 313; *See also James T.*, 2023 WL 1997471, at *3 (recognizing that "[a]lthough the explanation at times appears to inconsistent, the explanation is sufficient to serve the ultimate purpose of the requirement – to determine whether the RFC is supported by substantial evidence.") (internal quotations omitted).

It is true that the ALJ did not conduct a function-by-function analysis of Plaintiff's exertional capabilities. However, the failure to include such an analysis is not dispositive. *Mascio*, 780 F.3d at 636. In *James T. v. Kijakazi*, this Court concluded that an ALJ's narrative "adequately provide[d] a basis for the Court to assess how and why the ALJ concluded that Plaintiff could perform simple tasks" when the ALJ describe Plaintiff's daily activities and relied on several medical opinions. *See also James T.*, 2023 WL 1997471, at *4. Here, given the nature of Plaintiff's disabilities,[5] much of the ALJ's narrative provides an analysis of Plaintiff's self-reported symptoms and day to day conduct. (Tr. 32-35). The ALJ also recognized the reports of Dr. McMahon, Dr. Knotts, and Dr. Ghosh, each of which supported the conclusion that Plaintiff has difficulty sustaining tasks over time. *Id.* at 35. Moreover, the ALJ considered that Plaintiff is able "to perform a number of significant activities of daily living. He can cook meals for himself. He

---

[5] Fibromyalgia, chronic fatigue syndrome, depressive disorder, anxiety disorder, degenerative disc disease of the cervical and lumbar spine, impingement of the left ankle, migraine, mitral valve prolapse, fibromuscular disease, hypertension, neuropathy, tremor, and psychogenic non-epileptic seizures.

can still rive a car. He can shop in stores…he has been able to travel…to Bangkok, Bali, Malaysia, Japan, Vietnam, Singapore, North Carolina, and New York." *Id.* at 34. It is clear from this analysis that Plaintiff can sit for long durations of time but has difficulty performing high-pressure, fast-paced tasks. Accordingly, this Court finds that the discussion provides an adequate basis of the Court to assess how and why the ALJ concluded Plaintiff can perform "simple, routine, and repetitive tasks; requiring only simple decisions; with no work requiring a specific production rate, such as assembly line work or work that requires hourly quotas." *Id.* at 32.

## V.     Conclusion

In sum, the Court agrees with Defendant that the ALJ and subsequently the Appeals Council adequately considered Plaintiff's fibromyalgia and adequately explained Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is affirmed. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge